## JONES v. THE STATE.

EMBEZZLEMENT.—*Grand Larceny.*—*Indictment.*—Under the act of December 21st, 1865, defining embezzlement, etc., 2 R. S. 1876, p. 449, if a master entrusts his money or other property of value to his servant, and such servant fraudulently appropriates such money or property to his own use, he will be guilty of the crime of embezzlement only; and the facts will not sustain an indictment for grand larceny.

SAME.—*Criminal Law of this State.*—In this State, crimes and misdemeanors are defined and punished by the statutes of this State, and not otherwise.

From the White Circuit Court.

*A. W. Reynolds* and *E. W Sellers,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

HOWK, J.—At the January term, 1878, the appellant was indicted by the grand jury of the court below.

Omitting the venue, the style of the court, the title of the cause, and the signature of the prosecuting attorney, the indictment was as follows:

" The grand jurors of White county, in the State of Indiana, good and lawful men, duly charged and sworn to inquire into felonies and misdemeanors, in and for the body of White county, and the State of Indiana, on their oaths, present, that said Amos C. Jones, late of said county, on the 8th day of November, 1877, at the county of White, and State of Indiana, did then and there unlawfully and feloniously steal, take and carry away one twenty-dollar bank bill, of the value of twenty dollars, on a bank to the grand jurors unkown; two ten-dollar bills, of the value of twenty dollars, on banks to the grand jurors unknown; four five-dollar bills, of the value of five dollars each and of the total value of twenty dollars, on banks to the grand jurors unknown; the total value of money so unlawfully and feloniously stolen, taken and carried away being sixty dollars, all the personal goods and chattels of Truxton Head, then and there found, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Indiana."

Jones *v.* The State.

There was a second count in this indictment, charging the appellant with the embezzlement of the same bills and moneys mentioned ·in the first count, above set out; but, as on the trial the appellant was expressly found not guilty as charged in the second count, we need not set it out in this opinion.

On arraignment, the appellant said, for plea to said indictment, that he was not guilty as therein charged. The cause was tried by a jury, and a verdict was returned, finding the appellant " guilty as charged in the first count of the indictment, that he make his fine to the State of' Indiana in the sum of one dollar, that he be imprisoned in the state-prison for the period of two years, and that he be disfranchised and rendered incapable of holding any office of trust and profit for the period of two years;. and we find the defendant not guilty as charged in the second count of the indictment."

The appellant's motion for a new trial was overruled,. and he excepted to this decision; and his motion in arrest of judgment having also been overruled, and his excep-- tion saved to this ruling, judgment was rendered on the verdict.

In this court, the appellee has assigned, as errors, the following decisions of the court below:

1.   In overruling his motion for a new trial; and,

2.   In overruling his motion in arrest of judgment.

The main question presented for our consideration and decision in this case may be thus stated : Under the facts shown by the evidence on the trial of this cause, was the appellant guilty, and properly convicted, of the crime of grand larceny, as charged in the first count of the indictment?

There was no material conflict in the evidence. The appellant was a witness, in his own behalf, on the trial; but his account of the transaction, on which the indictment was predicated, did not differ materially from the evidence of Truxton Head, the prosecuting witness..

As necessary to a proper understanding of the question presented, we set out the evidence of Truxton Head, as it appears in the record, as follows:

"I am acquainted with the defendant, Amos C. Jones; he is present in court. He was an employee of mine; he worked for me last season. He then quit, and did not work for me until in the Fall, when I again employed him. He was teaming for me, and doing other chores. I am a merchant, and do business at Brookston, White county, Indiana. I entrusted to him sixty dollars—four five-dollar bills, two ten-dollar bills, and one twenty-dollar bill—at my store in Brookston. I gave him the money in an envelope, directed to Gregg & Bulger; the envelope was not sealed when I gave it to him. I merely put the money in it, and turned the flap of the envelope down over it. I told him to give it to Gregg & Bulger, and tell them to send me a load of flour. This was on the 6th day of November last. He was going to Delphi, with my team, for lumber. My impressions are, that it was all national currency. I do not know on what banks they were. There was one twenty-dollar bill, of the value of twenty dollars; two ten-dollar bills, of the value of ten dollars each, and both of the value of twenty dollars; four five-dollar bills, of the value of five dollars each, and the four worth twenty dollars; * * * * * * they were all of the value of sixty dollars. I know a majority of them were national currency, perhaps all; I do not know. I could not give the names of the banks they were on, as I did not keep a description of them. I saw him that evening, or next morning, when he returned with my team, I don't know which, and asked him why Gregg & Bulger did not send that flour. He said he was going to Pittsburgh next day, and would bring it himself. I then asked him if he had delivered the package* of money to Gregg & Bulger, and he said, yes. I had a conversation with the defendant after he came back from Illinois. He sent for me. I went to his house, and he

there said to me that he knew he had done wrong, and wanted to know what he would do about the matter, as he wanted to arrange it. I asked him if he had any of the money he took. He said he had ten dollars. I asked him to give it to Mr. Stewart. I delivered him the money at Brookston, White county, Indiana, on the 6th day of November, 1877. I am the Truxton Head mentioned in the indictment. I did not consent to his converting the money to his own use."

This was all the evidence of Truxton Head, on his direct examination. His cross-examination developed no new facts, and it did not result in any material change of any of his statements on his examination in chief. Therefore, we need not set out this portion of his evidence. We give, however, the evidence of the appellant, in his own behalf, as it appears in the record, as follows:

"I was in Head's employ, driving team and doing general work. I commenced about the 1st of September. Head is in the grocery and boot and shoe business. He gave me money about November 6th. He gave it to me in the south end of his store. He directed me to pay Gregg & Bulger. I put the money in my vest pocket, and talked to him ten or fifteen minutes. I then asked him for an envelope to carry it in, as I hadn't any pocket-book. I then went to Pittsburgh. I got back that evening. Head told me to go back next day. I was to go after a load of flour next day. The envelope was not sealed; I handed him back the money; he took an envelope, and he tore it open and put the money in. The next day I went back for a load of lumber. I got home about sun-down; was at Head's store; from there I went home. I then remembered about the money. I told my wife about it, and went down to the store to give it to Head, and he had gone home. I went from there to Long's saloon. I recollect of being in the billiard hall that evening, and the next thing I recollect of was when I was in Kankakee City. I have something the matter

with my head. Sometimes, when I get pains in my head, I get so I do not know what I am doing. I have those spells about every three months. I spent some of the money, and I lost some. I do not know how I went from Brookston. The first I remember I was in Kankakee City. I do not remember of going through Lafayette. I suppose I went on the night train from Brookston."

We have thus set out the statements of the two parties most interested in this prosecution, and most familiar with the actual facts of the case as they occurred. These statements were made under the sanction of their respective oaths. They differ in some of the details of the transaction; but, upon the material facts of this cause, as we understand them, they are in perfect harmony, each with the other. These material facts may be thus summarized : The appellant was a common laborer. He was the employee, the servant, of Truxton Head. His service was teaming and doing other chores for his employer, his master. He was "entrusted" by his master with sixty dollars in bank bills, in an unsealed envelope, addressed to Gregg & Bulger, Pittsburgh, Indiana, and told by his master to deliver the money and tell them to send him a load of flour. He went to Delphi, and returned to Brookston in the evening, and informed Head that he had delivered the money to Gregg & Bulger, and would go after the flour the next day. The temptation was apparently too strong for him, however, and that night he fled, with the money, into Illinois, and used the same for his own purposes.

If, under these facts, the appellant was guilty, and was properly convicted of the crime of grand larceny, then it seems to us, that "An act defining the crime of embezzlement, and prescribing the punishment therefor," approved December 21st, 1865, was a vain and empty enactment. 2 R. S. 1876, p. 449.

It is provided in this act, among other things, that "every clerk, treasurer, cashier, book-keeper, or other

person in the employment of any merchant, trader, manufacturer, or person, * * * who, while in such employment as aforesaid, shall purloin, secrete, or in any way whatever fraudulently appropriate to his or her own use, * * * any of the moneys, coins, bills, notes, credits, choses in action, or other property or article of value belonging to or deposited with * * * any such merchant, trader, manufacturer, or person, * * * in whose employment he or she may be, shall be deemed guilty of embezzlement, and upon conviction thereof and presentment or indictment, shall be fined in any sum not less than one nor more than five hundred dollars, and be imprisoned at hard labor in the state-prison not less than two nor more than twenty years."

Under this statute, it seems very clear to us, that where, as in this case, money or other property, or article of value, has been entrusted by a master to his servant or employee, and such money, etc., belonged to, or had been deposited with, the master, in whose employment the servant then was, if such servant has fraudulently appropriated such money, etc., so entrusted to him, to his own use, he will be guilty only, and can only be convicted, of the crime of embezzlement. In this State, "Crimes and misdemeanors shall be defined, and punishment therefor fixed, by statutes of this State, and not otherwise." 1 R. S. 1876, p. 606, sec. 2.

The facts of this case, as we have seen, bring it fairly within the letter, spirit and intention of the embezzlement act. The appellant was guilty, if guilty at all, of embezzlement, and was certainly not guilty of the crime of grand larceny, as the same is defined by statute in this State.

In our opinion, the evidence did not sustain the verdict, and for this reason we hold that the court below erred in overruling the appellant's motion for a new trial.

The judgment is reversed, and the cause is remanded

for a new trial; and the clerk of this court will give the proper notice for the return of the appellant to the sheriff of White county.