Argued at Pendleton November 1, 1921, affirmed January 10, 1922.

# STATE v. DOOLEY.

(203 Pac. 304.)

**Larceny—Statute Construed as Covering Only Cases of Common-law Larceny and as Requiring Proof of Trespass.**

1. Section 1947, Or. L., defining the crime of larceny, was designed to cover only those cases which would have been larceny at common law, and to sustain a conviction thereunder it must appear that the taking of the property amounted to a trespass.

**Property—Absolute Ownership of Chattels Draws to It Right of Possession.**

2. The absolute ownership of chattels draws to it the right of possession as an incident, and the possession may be actual or constructive.

**Larceny—Defined.**

3. "Larceny" is the felonious taking of chattels from the owner, who has either the actual or constructive possession thereof, with intent to steal the same.

**Larceny—Bailee cannot be Guilty of Larceny of Bailed Property Unless He had Intent to Appropriate When It Came into His Hands.**

4. Since a bailee is, by virtue of his special ownership, in lawful possession of the thing bailed, he cannot be guilty of larceny for its fraudulent conversion, unless the intent to appropriate it existed in his mind at the time it came into his hands.

**Larceny—Wrongful Conversion of Property Obtained Fraudulently from the Owner With His Consent, Intending to Steal It, is Larceny.**

5. Where one obtained possession of property with the consent of the owner by fraud, intending at the time he received it to steal it, the subsequent wrongful conversion is larceny.

**Larceny—By Bailee is Separate Crime.**

6. The crime of larceny by a bailee, defined by Section 1956, Or. L., is a separate and distinct offense from the crime of larceny defined by Section 1947.

**Indictment and Information—An Accused Person cannot be Indicted or Tried for One Crime and Convicted of Another.**

7. An accused person cannot be indicted or tried for one crime and be convicted of another.

---

3. On sale of another's property as larceny, see note in 10 L. R. A. (N. S.) 816.

4. On fraudulent conversion of property by one legally in charge or custody thereof, see note in 2 L. R. A. (N. S.) 249.

Larceny—Instructions Necessary When Crime may be Larceny by Bailee.

8. Where, in the trial of a larceny case, it becomes a question of fact for the jury, under proper instructions by the court, whether the crime is larceny or larceny by a bailee, the court should instruct that, if the jury believe from the evidence beyond a reasonable doubt that the defendant was guilty, but not guilty of the crime charged, they must acquit the defendant.

Larceny—Evidence Held Sufficient to Support Conviction.

9. Evidence *held* sufficient to support a conviction of larceny.

Larceny—Offense Held Committed.

10. Where the owner of an automobile had defendant drive it to a town and put it in a garage, where defendant's rights over the automobile were to cease, and afterward had his agent take possession of the car and order defendant to leave it alone, after which defendant took the car away and sold it, the offense committed was larceny.

From Union: J. W. KNOWLES, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. R. J. Kitchen* and *Mr. R. J. Green.*

For respondent there was a brief over the names of *Mr. Ed. Wright* and *Messrs. Ivanhoe & Ringo,* with oral arguments by *Mr. Wright* and *Mr. E. R. Ringo.*

RAND, J.—1. The defendant was indicted, jointly with T. J. Keelen, charged with the crime of larceny by stealing a Ford automobile belonging to one George Robertson. Upon his separate trial, he was convicted of the crime as charged in the indictment. Section 1947, Or. L., defines the crime with which the defendant was charged. This section was designed to cover only those cases which would have been larceny at common law. All of the essential features which were necessary to establish larceny at common law are still requisite to sustain a convic-

tion under this statute, among which is the requirement that to constitute the offense of larceny, it must appear that the taking of the property amounted to a trespass.

2, 3. In larceny there must be a trespass and trespass is a wrong to the possession: *Holbrook* v. *State*, 107 Ala. 154 (18 South. 109, 54 Am. St. Rep. 65). The absolute ownership of chattels draws to it the right of possession. The right of possession is an incident to the ownership of a chattel. Possession may be actual or constructive and the felonious taking of chattels from the owner, who has either the actual or constructive possession thereof with intent to steal the same, is larceny.

4. In the case of a bailment the owner retains a general ownership in the subject of the bailment, but the bailee acquires a special ownership in it and is deemed to have the right of its possession during the period of the bailment for the object or purpose of the bailment. Being in the lawful possession of the thing bailed, the bailee cannot be guilty of larceny for its fraudulent conversion, unless the intent to appropriate it existed in the mind of the taker at the time it came into his hands: *Smith* v. *Commonwealth*, 96 Ky. 85 (27 S. W. 852, 49 Am. St. Rep. 287, and note). Also see note in 54 Am. St. Rep. 67.

5. If, however, one obtains the possession of property with the consent of the owner by fraud, intending at the time he received it to steal it, he will be guilty of larceny by the subsequent wrongful appropriation of it. To bring the case within this rule there must exist at the time an *animus furandi,* which is an essential element of larceny: *Williams* v. *State*, 165 Ind. 472 (75 N. E. 875, 2 L. R. A. (N. S.) 248), and authorities there cited.

6–8. Section 1956, Or. L., defines the crime of larceny by bailee. This is a separate and distinct offense from the one for which the defendant was indicted, and for which he was tried and convicted. The rule is well settled in this state and it is a fundamental principle of the common law, that a defendant cannot be indicted or tried for one crime and be convicted of another: *State* v. *Howard,* 41 Or. 49, 53 (69 Pac. 50). In the trial of larceny cases it frequently happens that it becomes a question of fact for the jury to determine, under proper instructions from the court, whether the crime proved is larceny or larceny by bailee. In such cases it becomes the duty of the court, as was done in the court below, to instruct the jury that if the jury believed from the evidence beyond a reasonable doubt that the defendant was guilty, but not guilty of the crime charged, the jury must acquit the defendant.

9, 10. Notwithstanding that the jury was properly instructed in this regard, the defendant contends that there is not sufficient evidence to sustain the conviction of larceny; that if the evidence established the commission of any crime, the crime was larceny by bailee and not larceny. This contention cannot be sustained. The evidence disclosed that Robertson, the owner of the automobile, after being driven in the automobile by the defendant to a station near La Grande where he was about to take the train to Portland, delivered the car to defendant, who agreed to drive it back to La Grande and return it to the Hilton garage where it was being kept at the time. It is admitted that the defendant did return the car to the Hilton garage as he had agreed to do. If, under any possible consideration of this testimony,

the mere transaction of Robertson's delivery of the
car to Dooley for the sole purpose of having it re-
turned to the Hilton garage, could in any way con-
stitute a bailment, the bailment terminated when
Dooley returned the car to the garage; while, if the
transaction created an agency, the agency ended when
the agent returned the car to the garage. In either
event, the authority and control over the car was
lost to the defendant by the return of the car to the
garage. The defendant was not the servant of Rob-
ertson, because he was not to receive any compensa-
tion for his services. If defendant had been a ser-
vant or agent, he would  have been invested only
with the mere custody of the car; and, whether acting·
as servant or agent, while the car was in his care,
Robertson would retain the constructive possession
of it. So, under any possible view which may be
taken of the transaction, it follows that whatever
relations existed between the parties, whether that
of agency, employment or bailment, those relations
ceased upon the return of the car to the Hilton
garage. At that time the object and purpose for
which the car was delivered to the defendant had
been accomplished and the defendant had fully per-
formed all obligations upon his part and the car
was then at the place where both parties had agreed
it should be taken. The facts, as appear from the
testimony, that the defendant subsequently, without
the knowledge or consent of Robertson, took the car
from the garage and used it, paid storage bills on it,
and that a tag with his name written thereon was
attached to the car, could not create a new agency,
a new employment or a new bailment; or extend the
existence of either, as all such relations, if any in

fact existed, were terminated by the return of the car at the appointed place.

As said by Sir William Blackstone, Book IV, Section 230:

"But if the carrier * * carries it to the place appointed and afterwards takes away the whole, these are larcenies."

Again, it is undisputed that shortly after Robertson arrived in Portland he caused a letter to be written to M. F. Goss, from whom he had purchased the car, authorizing and directing him to go to the Hilton garage and ascertain whether the car had been returned, and if he found that the car was there and being used by the defendant or anyone else to have it placed in dead storage and not permit anyone to use the car. Acting under these instructions, Goss, as the agent of the owner, went to the garage, took possession of the car and had it moved to the basement of the garage and gave instructions not to permit the defendant or anyone to use the car. Goss then notified the defendant of what he had done, showed him the letter and ordered him not to interfere with the car. Subsequent to this, the defendant, without the knowledge or consent of Robertson, took the car from the Hilton garage to the filling station of his codefendant, Keelen, where the defendant and Keelen sold the car to one Teeters, for $275. The defendant testified that he received this sum of money for the car and appropriated it to his own use. Regardless of what may have been the relationship between the parties at the time the car was delivered to the defendant by Robertson, when Robertson through Goss, his agent, took possession of the car at the Hilton garage, it operated to extinguish such

relationship and to restore the possession to Robertson. It was, therefore, proper for the court to refuse to direct a verdict for the defendant and to refuse to give the instruction requested upon the question of bailment, and to overrule the motion for a new trial. There was no error as contended for.

After a careful examination of all of the assignments of error, we are unable to find error.

For the above reasons the judgment of the lower court is affirmed, and it is so ordered. AFFIRMED.